[Civ. No. 6881. · Second Appellate District, Division One.—December 1, 1931.]

GLADDING, McBEAN & CO. (a Corporation), Respondent, v. SOUTHERN SECURITIES COMPANY (a Corporation), Appellant.

Lawler & Degnan for Appellant.

G. C. DeGarmo and H. B. Cornell for Respondent.

HOUSER, J.—Prior to the happening of the particular incidents upon which the action which forms the foundation

of the appeal herein depends, a corporation known as Fry Bros. Contracting Company entered into a contract with the street superintendent of the city of Venice for the improvement of a street located in said city, known as Venice Boulevard. Thereupon the contractor filed the required bond for the benefit and protection of persons who might perform labor for, or furnish materials to, the contractor, to be used in the performance of the work in question. Thereafter the contractor entered into an agreement with the appellant Southern Securities Company by which, for certain consideration moving to it, the latter corporation agreed to furnish directly to the contractor certain moneys to be used by him in financing the job. In the course of the performance of the work incident to the contemplated improvement, the contractor became indebted to the plaintiff Gladding, McBean & Company on account of certain materials furnished by said plaintiff to the contractor and which materials were used in the construction of the said improvement. The said debt not having been paid, and the time being about to expire within which, by the filing of a "stop notice", the plaintiff might protect its interests in the premises and probably insure the payment of the debt under the provisions of the contractor's bond, the plaintiff approached the defendant Southern Securities Company with a view to having the latter pay the debt for the contractor in accordance with the authorization so to do under the provisions of the financing agreement to which reference has been had; in pursuance of which, at defendant's request, at a time preceding by thirteen days the date of expiration of the time within which the plaintiff might have filed its said "stop notice", the plaintiff procured from the contractor an order expressed in the following words:

"Please pay to Gladding, McBean & Co., the sum of $1353.35, this being in full of their account for material furnished on our Venice Job"; and which order, on at least two occasions prior to the expiration of the time allowed by law within which a "stop notice" might have been filed by the plaintiff, the defendant agreed to accept. The evidence adduced on the trial of the action warrants the conclusion reached by the trial court that in violation thereof, both as to the date of its execution, and as to the

contents of the acceptance, the defendant failed to execute its acceptance of the order until after four days had expired following the last day upon which said "stop notice" effectively might have been filed; at which time, in the language hereinafter quoted, the defendant executed its acceptance of the said order, to wit:

"We accept the above order, payable out of any funds that may be due Fry Brothers Contracting Company upon the issuance of the bonds in payment of the above job, in accordance with our contract with Fry Bros. Contracting Company."

Thereafter the defendant failed and refused to pay the said debt which was owing by the contractor to the plaintiff, with the result that an action was brought on said acceptance by the plaintiff against the defendant, which eventuated in a judgment in favor of the plaintiff, and from which judgment this appeal is prosecuted.

The foundation of the defense to the action, as well as the basis for this appeal, depends upon the construction which should be placed upon the language of the acceptance of the order, and especially upon that part thereof wherein, in effect, the defendant agrees that it will pay the debt of the contractor owing to the plaintiff "out of any funds that may be due . . . in accordance with our contract with Fry Bros. Contracting Company".

Referring to the contract in question, it is noted that by one of its provisions "said contractor hereby guarantees the repayment to said second party of all money advanced by second party to said contractor under and pursuant to this agreement, and any other money that may be due from said contractor to said second party, and said contractor hereby agrees to hold and save harmless the said second party from any loss, damage or expense which second party may suffer or incur by reason of this agreement".

And it is particularly by reason of such provision, together with the asserted fact that, after deducting "other money . . . due from said contractor to said second party" from the amount that was due to the contractor on account of the Venice job, nothing belonging to the contractor remained in the possession of the defendant, the said defendant claimed at the trial of the action, and here contends,

that no liability ever existed against it and in favor of the plaintiff.

As offsetting and overcoming the provision of the financing contract to which attention has been directed, the plaintiff points not only to the fact that in accordance with the provisions of said contract, moneys were furnished by the defendant directly to the contractor, but also to various other provisions thereof, which indicate that the clause "other money due from said contractor to said second party", had reference to such "other money" only as was disbursed by the defendant to persons who had unpaid claims against the contractor on account of labor performed upon, or materials furnished to, the Venice job. So that, even viewed from the standpoint of the defendant, it could not be relieved from the consequences of its acceptance of the order in question. ▆ But by the findings of fact made by the trial court it plainly appears that the basis of its conclusion was that because at a time when the plaintiff might have protected its claim against the contractor by filing its stop notice, it was prevented from doing so by reason of the promise of the defendant that it would unconditionally accept an order from the contractor to pay the claim of the plaintiff, in effect the defendant thereafter was estopped from denying its liability on its acceptance, without reference to whether the contractor either then or at any other time was or would be entitled to a credit either for the amount of money represented by the claim of the plaintiff, or for any other amount of money whatsoever. ▆ However, in that connection the appellant contends that neither fraud of the defendant nor mistake of any kind was properly pleaded by the plaintiff, and in consequence that the plaintiff should be precluded from a recovery which rests upon either of such grounds. An examination of the complaint in the action discloses the fact that, relative to the alleged fraud of the defendant, it contains allegations in substance that after the time had expired within which a "stop notice" might have been filed by the plaintiff, "said Southern Securities Company, contrary to and in violation of its promises theretofore made to said plaintiff in that behalf, refused to accept said order, except conditionally", and thereupon signed a conditional acceptance. Furthermore, "that by reason of the fraud and

misrepresentation of said Southern Securities Company hereinbefore set out said plaintiff has lost its right to recover the amount due it as aforesaid from the surety on said contractor's bond. . . . ''

Notwithstanding the general criticism made by the appellant of the pleading of the plaintiff, the statement in the brief of the appellant that ''it will be realized that the complaint charges fraud and misrepresentation'', constitutes a frank admission on the part of the appellant that on the trial of the action it was not deceived or misled by the allegations with reference to fraud that were contained in the plaintiff's complaint. In addition thereto, it appears that a great part of the evidence upon which the proof of fraud or misrepresentation of the defendant depended was contained in a deposition of a witness for the plaintiff which, in his absence at the trial of the action, was read in evidence; from which it would seem that the defendant had ample notice not only of the nature of the evidence upon which the plaintiff would rely to establish its case against the defendant, but as well in part was informed of what such evidence would consist. In any event, the action was tried on the theory that the defendant was liable as for an unconditional acceptance by it of the order in question; and in that connection, on substantial evidence in its support, the trial court found:

''That believing and relying upon said statements, promises and agreement of said Southern Securities Company that it would unconditionally accept said order in writing, as aforesaid, this plaintiff did not file any notice as provided in said section 19 of said Street Improvement Act for the purpose of recovering from said Southern Surety Company as surety on the contractor's bond. . . . ''

Although it is manifest that the pleading of the plaintiff to which the appellant here objects should not be considered as a model for the object sought to be attained, nevertheless it is equally plain that the real issue in the action was thoroughly understood and acted upon not only by each of the parties thereto, but as well by the trial court.

Since it appears that the evidence was sufficient to support the findings of fact made by the trial court; also that no miscarriage of justice resulted from the defective pleading

(sec. 4½, art. VI, Const.); furthermore, because after careful examination of the brief filed by the appellant it is concluded that no other alleged error merits discussion by this court, it is ordered that the judgment be, and it is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 30, 1931, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 28, 1932.