[Civ. No. 4812.   Fourth Dist.   Nov. 6, 1953.]

EVELYN N. GILLETTE, Respondent, v. J. E. NICOLLS, Appellant.

Stanford & McDonough for Appellant.

Vincent Whelan for Respondent.

MUSSELL, J.—This is an action to quiet title to real property in the city of San Diego. Plaintiff's claim to title is based upon a joint tenancy deed executed by her sister, Mary M. Nicolls, on February 1, 1951. Mary M. Nicolls died on or about July 24, 1951, and title to the property thereupon passed to plaintiff as the surviving joint tenant. On or about April 23, 1951, while Mary was ill and in a sanitarium, her brother, John, the defendant in this action, visited her and complained to her about having no part in her estate and stated that he felt he should be her sole heir. Mary then prepared and signed the following writing:

"Monday—April 23/51

"An Agreement

Re Nicolls Real Estate in S. D.

"In order to avoid as much misunderstanding as possible and to add to the happiness & security of all we agree to the following and set our signatures to this paper to confirm our intention of carrying out the following suggestions—

"(1) So long as Mother lives things shall continue as of the present time—

"(2) After Mother's death, Evelyn shall take over complete management of said property—

"(3) John is to have an apartment or whatever living quarters are used in the new investment—since it quite likely that a property with *more* rentals can be had in exchange or in place of for present property—

"(4) After Mother's death John is to have a *life long interest* in an adequate place to live *rent free* and to share with Mary Elizabeth equally if Evelyn should pass on unexpectedly.

/s/ Mary M. Nicolls
/s/ Evelyn Gillette

"Nothing in the above shall keep Evelyn and John from making additional plans if they so wish—"

This document was signed by the plaintiff, at Mary's request, and was delivered to the defendant herein. Thereafter, the defendant told Mary that this writing was worthless and that he would see an attorney for the purpose of having documents prepared which would be valid to carry out the intentions which she had expressed in the writing of April 23, 1951. On or about July 9, 1951, defendant procured and presented to Mary for execution a grant deed conveying the property involved to him. This deed was executed and acknowledged by Mary Nicolls on July 9, 1951, and a will also prepared by defendant was signed by her at the same time. Elizabeth Nicolls, the mother of Mary and the parties to this action, died on July 10, 1951.

Defendant admits that plaintiff is the owner of an undivided one-half interest in the subject property but contends that he is the owner of the remaining one-half interest by virtue of the deed of July 9, 1951.

The trial court found that at the time of the signing of said deed plaintiff and Mary Nicolls were the owners as joint tenants of the property described therein; that by the quoted instrument of April 23, 1951, Mary Nicolls and defendant intended to and did agree as follows: ''That during the lifetime of their mother the title to the real property hereinbefore described should remain as it then was in joint tenancy between the plaintiff and said Mary M. Nicolls; that both the plaintiff and said Mary M. Nicolls agreed thereby not to partition said real property during their joint lives, nor to destroy the existing joint tenancies; and that so long as they jointly or either of them held title to said real property, the defendant should be entitled to occupy an apartment in said real property free of rent, after the death of the mother of the plaintiff and defendant and said Mary M. Nicolls and that in the event said real property should be sold and the proceeds reinvested in another apartment house, that plaintiff or said Mary M. Nicolls would, after the death of their mother, furnish to the defendant an apartment or living quarters in such new investment free of rent; . . . that a prima facie proof has been made that the defendant exercised undue influence upon said Mary M. Nicolls in obtaining the preparation, signing and delivery of the deed hereinbefore referred to; that such prima facie proof of undue influence has not been overcome by the defendant; and that said deed was signed and delivered by said Mary M. Nicolls as the result of undue influence exercised upon her by said defendant.'' The court

further found that on April 23, 1951, and at all times thereafter, the defendant had knowledge of the fact that the plaintiff and Mary M. Nicolls had executed the contract dated April 23, 1951, hereinbefore referred to, and knew the contents of said contract, and had notice of its effect, and thereby was charged with the knowledge that said Mary M. Nicolls had, by said contract agreed that the title to the real property herein referred to was to remain undischarged by the voluntary act of either of the parties to said contract; that the deed signed by said Mary M. Nicolls, to the defendant as grantee, was in violation of said contract of April 23, 1951; and that the defendant, by reason of said facts, was and is bound by said contract of April 23, 1951; that the plaintiff is the owner of the real property hereinbefore described, subject to the right of the defendant to occupy personally an apartment in said real property rent free, so long as the plaintiff shall continue to own said property; and that should plaintiff sell said property and reinvest the proceeds in another apartment house she is obligated to furnish to defendant an apartment or living quarters in such new investment rent free.

The trial court rendered judgment canceling and setting aside the deed of July 9, 1951, and further decreed that defendant is estopped to assert the validity of said deed; that he does not have any right, title or interest in the property except the right to occupy personally an apartment in said real property, rent free during his lifetime, so long as the plaintiff shall continue to own said property; that should plaintiff sell or dispose of said property and reinvest the proceeds in another apartment house, plaintiff shall furnish to the defendant an apartment or living quarters in such investment free of rent.

Defendant first contends that plaintiff does not have standing in court to contest the validity of the deed of July 9, 1951. However, in *Reina* v. *Erassarret*, 90 Cal.App.2d 418 [203 P.2d 72, 7 A.L.R.2d 1309], this court held that a surviving joint tenant may maintain an action to set aside a conveyance obtained from his deceased cotenant by fraud and undue influence. In the instant case, defendant having raised the issue of the deed in his answer cannot complain that plaintiff made such defenses thereto as were available to her. Defendant, having permitted this issue to be litigated, cannot on appeal escape the consequences by claiming that such issue was not pleaded. The trial court could not determine the respective rights of the parties without

determining the effect and validity of the deed of July 9 and the agreement of April 23, 1951. (*Hernandez* v. *Hernandez*, 109 Cal.App.2d 903, 910 [242 P.2d 59].) ▆ While the complaint herein and the amendments thereto might have been more carefully drawn, sufficient facts were alleged and proved to support a finding of undue influence. There is substantial evidence in the record that Mary had confidence in and trusted her brother, John; that he advised her that the agreement of April 23, 1951, "would not hold water"; that he then stated to her that he would have documents prepared to carry out her intentions; that he procured a deed to the property from her and the execution of a will. That she did not understand the nature of these documents was shown by the testimony of her physician who was present when these instruments were signed by her. Under these circumstances an inference arises capable of sustaining a finding that undue influence was used. (*Olson* v. *Washington*, 18 Cal.App.2d 85, 87-88 [63 P.2d 304].) There was a presumption of invalidity in the execution of the deed and will which, while rebuttable, could only be overcome by clear and satisfactory evidence that the transaction was fair and equitable; that Mary fully understood the nature of the instruments executed by her; and that no advantage had been taken of the confidential relationship which existed. (*Estate of Hamaker*, 114 Cal.App.2d 533, 540, 541 [250 P.2d 637].)

▆ Defendant argues that the trial court erroneously construed the agreement of April 23, 1951, as a contract between joint tenants to maintain the joint tenancy until the death of one of them. This argument is without merit. The agreement involved does not contain language indicating that the parties thereto intended to destroy the existing joint tenancy and the construction adopted by the trial court is reasonable under the circumstances. ▆ As was said in *Hammond* v. *McArthur*, 30 Cal.2d 512, 516 [183 P.2d 1]: ". . . joint tenants may contract with each other concerning the exclusive possession and division of income from the property and this will not necessarily terminate the joint tenancy. (*Wells* v. *Wells*, 64 Cal.App.2d 113 [148 P.2d 126]; *Tindall* v. *Yeats*, 392 Ill. 502 [64 N.E.2d 903]; see 48 C.J.S. 933; 33 C.J. 911." ▆ It was the evident intent of the parties to the agreement to provide living quarters for defendant during his lifetime without affecting the title to the property in the event of the death of one of the joint tenants,

thus giving to defendant a limited possessory interest in the property.

Defendant argues that there can be no recovery for breach of contract without an allegation of breach. However, the instant action is to quiet title to real property and the trial court having found on sufficient evidence that the joint tenancy was not destroyed by the agreement of April 23, 1951 and that the deed of July 9, 1951, was signed and delivered by Mary Nicolls as the result of undue influence exercised upon her by the defendant, the judgment is fully supported by the record.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied December 2, 1953.